Bernard M. Mamet, Chicago, Ill., for appellant.

Joseph Tyrrell, Ronald L. Cohen, Chicago, Ill., for appellees.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Two actions involving section 101(a), subsections (4) and (5), of the Labor-Management Reporting and Disclosure Act of 1959 (Landrum-Griffin Act), 73 Stat. 522, 29 U.S.C. § 411(a) (4) (5) (Supp. IV, 1962), were consolidated for trial by the district court. This appeal is from a judgment for plaintiffs.

In the first action seven members of Local Union No. 9 (Chicago) of the International Brotherhood of Electrical Workers, AFL–CIO, sought to enjoin the local union from enforcing certain penalties imposed upon them following internal union trials wherein they were charged with creating dissension among and slandering fellow union members. In the second action five of the original plaintiffs sought the same relief against the officers and the trial board of the local union.

A résumé of the procedural aspects of the union trials follows. Plaintiffs were charged with two offenses which are defined in the International constitution as follows:

> (8) Creating or attempting to create dissatisfaction or dissension among any of the members or among L. U.'s of the I. B. E. W.

> (10) Slandering or otherwise wronging a member of the I. B. E. W. by any wilful act or acts.

John J. LANIGAN, Clifford Rees, Jack D. Bruce, James M. Murphy, Richard E. Lynn, Stanley F. Hlady, and Mark E. Casey, Plaintiffs-Appellees,

v.

LOCAL UNION NO. 9 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendant-Appellant.

Jack D. BRUCE, Stanley F. Hlady, Mark Casey, Clifford Rees and James M. Murphy, Plaintiffs-Appellees,

v.

Robert FITZGERALD et al., Defendants-Appellants.

Nos. 14139, 14140.

United States Court of Appeals Seventh Circuit.

Feb. 5, 1964.

On various dates in April and May, 1960, each plaintiff was found guilty by the local union's trial board of violating these provisions.

The constitution provided that the executive board of the local union should constitute the trial board. Before the union trials began plaintiffs asked that the composition of the trial board be changed. They invoked a provision of the constitution that "no [executive] board member shall sit in a case which affects his own employer, or which involves a member working for the same employer." In such circumstance the constitution provides that the executive board member shall be disqualified and the president of the local union shall appoint a substitute to fill the vacancy occurring on the trial board.

Pursuant to this constitutional directive, the president of Local Union No. 9 appointed substitutes to fill four vacancies on the board. At no time before or during the internal trials did the plaintiffs object to the composition or the method of selection of the newly constituted trial board.

The trial board, after finding the plaintiffs guilty, said that it did not "desire to create any financial hardship upon his family." Accordingly, it directed that each plaintiff be ineligible to participate in the affairs of the local union for a period of three years or one year depending upon his involvement in the proscribed conduct. The board emphasized that its action was not to be construed as interference with the right of the plaintiffs to work at their present job or at any other job within the jurisdiction of the local union or the International union.

Plaintiffs appealed the decision to the International vice president on May 25, 1960. Despite the pendency of the appeal, plaintiffs filed their first action in the district court on June 9, 1960.

On May 15, 1961, the vice president of the International union confirmed the trial board's decision. However, he reduced the penalties so that the membership rights and privileges of all the plaintiffs were restored by July 25, 1961.

Plaintiffs subsequently appealed to the International president. Plaintiffs contended that they would be prohibited from running for union office after the penalty period expired. The president held they were in error, and the only interpretation which could be given to the decision of the board as commuted by the International vice president was that plaintiffs were entitled to participate in all activities, including the running for office, after July 25, 1961.

Thereafter, on September 15, 1961, the International executive council affirmed the president's decision and the International convention affirmed on September 14, 1962.

By the time the cases were tried in the district court in October, 1962, all rights, privileges, and benefits enjoyed by members of the local union had been restored to plaintiffs.

In the district court plaintiffs contended that the union trials were not fair as required by section 101(a)(5) of the Landrum-Griffin Act. This section provides that no member of any labor organization may be disciplined unless he has been (1) served with written specific charges, (2) given a reasonable time to prepare his defense, and (3) afforded a full and fair hearing.

The district judge ruled that requirements one and two of the statute had been met. He found, however, that although the union trial proceedings were in accord with the International constitution, plaintiffs had not received a fair hearing because of an inherent defect in the constitution. The constitution provided that when a member of the trial board was disqualified, substitution should be made by the local union president. In the instant cases one of the charges against the plaintiffs was slandering the president of the local union. Because four of the five members of the trial board had been appointed by the president, who was allegedly interested in the outcome of the trial and who testified against plaintiffs, the district court concluded that the board was not impartial.

The judge directed that the court's judgment and memorandum decision be made a part of the files of the local union; that the local union inform its members and the officers of the International union of the court's ruling; and that the local union reimburse plaintiff's $1,300, representing costs of a transcript of the union trials made by a court reporter independently hired by plaintiffs.

Defendants moved to dismiss the actions filed in the district court for lack of jurisdiction over the subject matter because (1) plaintiffs had failed to exhaust internal administrative remedies required by section 101(a) (4) of the Landrum-Griffin Act, (2) plaintiffs had failed to join the local union as an indispensable party, and (3) neither action was a case or controversy cognizable by the federal courts, that is, they were moot. The motion was denied.

In this appeal defendants contend that the district judge erred in denying the motion to dismiss, refusing to admit in evidence the transcript of the union trials, awarding damages, and determining that the trials were not fair.

The district judge ruled that the cases were not moot because the procedure followed in the union trials violated the Landrum-Griffin Act, and "in future trials of union members, perhaps of these same men, the same procedures may be followed." As authority, the judge cited United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Local 74, United Bhd. of Carpenters v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309 (1951); and Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944). He said:

"In those cases as in the instant cases the judgment of the court would not eliminate a present violation of plaintiff's rights: It would, however, serve to avoid repetition in the future of such illegal conduct as had occurred previously and which otherwise the defendant would be free to resume. It is true that the mere existence of a blemish on the reputation of the plaintiffs would not present a case or controversy for this court to determine. St. Pierre v. United States, 319 U.S. 41 [63 S.Ct. 910, 87 L.Ed. 1199] (1943). However, more than removal of a stigma is at issue in this suit. Without a declaration by this court at this time that the procedures followed in the union trial at issue were illegal, subsequent trials may be conducted in the same fashion. No assurances have been made to the contrary. In fact the defendant union strongly urges the legality of the procedures followed. The procedures were in accordance with the provisions of the Union Constitution which are still in effect. It would appear that a declaratory of illegality is essential to avoid repetition of the offense. Thus there is at present an actual controversy and the cause cannot be said to be moot."

We believe, however, that the cases were moot at the time they were heard and should have been dismissed.

There are differences that make Grant, Carpenters Union, and Helmerich & Payne inapposite to the instant situation. Those cases were injunction suits seeking to enjoin specific types of conduct. The Court held that cessation of illegal conduct did not diminish the risk of future similar conduct; therefore, the cases were not moot. Here plaintiffs sought to enjoin the enforcement of the penalties imposed upon them. However, at the time the cases were heard the penalties had been served and the union rights restored. There was nothing to enjoin.

It should be noted that plaintiffs did not seek to enjoin the future enforcement of the assailed constitutional provision. Should a union member claim in the future that this provision violates the Landrum-Griffin Act, he would have to institute a new suit to determine the issue.

The instant cases are analogous to United States v. St. Pierre, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), and Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909,

4 L.Ed.2d 963 (1960). In St. Pierre and Parker petitioners sought review of prison sentences imposed upon them. The Court held both cases were moot because the petitioners had been released from prison prior to the hearings before the Supreme Court.

Even more apposite is Patterson v. International Alliance of Theatrical Employees, 323 F.2d 368 (10th Cir.1963). In that case, a union member asked the district court to void an order of the union suspending his membership for six months because of alleged misconduct. He requested the suspension be expunged from the records of the local union and that the union be enjoined from enforcing the order. The hearing before the district court came on subsequent to the expiration of the suspension order and when the plaintiff was again enjoying full membership privileges. The district court dismissed the case as moot. Affirming, the court of appeals said:

> "The order of suspension related solely to Patterson's relationship with the Union. It in nowise affected his employment, his pay, his seniority, his working conditions, or his status as an employee. At the time of the trial below, he was enjoying all the rights and privileges of a member of the Local. There was no likelihood that any further disciplinary action would be taken in the matter which brought about his suspension.
>
> "In that posture of the case, it seems to us that the controversy was abstract or moot, rather than definite or concrete."

Our holding that the instant cases were moot and should have been dismissed makes it unnecessary to discuss the other alleged errors. We are mindful of what the Supreme Court said in United States v. Alaska S. S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920):

> "However convenient it might be to have decided the question * * * this court 'is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.'"

The judgment is reversed with direction to dismiss the actions.