**NEW LEFT EDUCATION PROJECT et al., Plaintiffs-Appellees.**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM, Defendant-Appellant.**

No. 72–1795.

United States Court of Appeals,
Fifth Circuit.

Jan. 19, 1973.

Crawford C. Martin, Atty. Gen. of Texas, W. O. Shultz, II, Asst. U. S. Atty., Austin, Tex., for defendant-appellant.

David R. Richards, Austin, Tex., for plaintiffs-appellees.

Before GEWIN, BELL and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This appeal involves a district court order granting declaratory and injunctive relief against the Board of Regents with respect to two Board of Regents rules applicable at the University of Texas. The order was first entered by a three-judge district court, 326 F.Supp. 652, and the Regents appealed on October 30, 1970 to the Supreme Court. After argument, the Supreme Court handed down a decision holding that the rules were local in nature, the three-judge district court was improperly convened, and thus no appeal would lie to that court. Board of Regents v. New Left Education Project, 1972, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697. The Supreme Court also provided:

"Since the three-judge court was improperly convened, appeal lies not here but to the Court of Appeals for the Fifth Circuit. So that appellant may be able, if it desires, to perfect a timely appeal, we vacate the judgment below and remand the case with instruction that the court enter a fresh decree."

The matter was then remanded under date of January 24, 1972, to the district court for entry of a fresh decree.

Thereupon the following events occurred. On January 28, 1972, prior to entry of the fresh decree, the Regents moved the district court to hear and consider further argument prior to the entry of the fresh decree, pointing to new court decisions which were said to affect the merits as to one of the rules (Rule 6.11), and the propriety of injunctive relief in any event. They also conceded the unconstitutionality of the other rule (Rule 6.12).

On February 4, 1972, the Regents repealed the contested rules (Rules 6.11 and 6.12) and enacted rules with the same numbers to be effective in lieu thereof. On February 7, 1972, the New Left objected to reopening the case on the merits.

On February 9, 1972, the district court entered a fresh decree, declaring Rules 6.11 and 6.12 unconstitutional and enjoining the Regents from enforcing them. The motion to reopen was not mentioned nor was any order entered thereon. At this point, the repeal of the rules had not been brought to the attention of the district court.[1]

There are three issues presented on appeal. First, the Regents urge that the appeal has been mooted by the repeal of the rules in question and thus that the judgment of the district court is to be vacated. Second, if not mooted, they urge the application of res judicata principles by virtue of a judgment rendered in a state court involving old Rule 6.11 and allegedly a class which included plaintiffs here. Third, they assert that old Rule 6.11 is constitutional and that the court erred in holding otherwise. In view of our holding on the question of mootness, we do not reach the second and third assignments of error.

1. On February 22, 1972, the Regents moved to clarify the judgment on the ground that it should be made clear that it pertained to the old rather than the new rules. This motion was denied. This ruling is not contested on appeal. This was the first notice to the district court that the rules had been repealed.

■ The first question is whether the repeal of the old rules mooted the appeal. We hold that it did but, as will be seen, this gives rise to a substantial question of law.

The new rules are radically different from the rules which resulted in the controversy that was litigated below. The restrictions against which the appellees complain no longer exist. No actual controversy is presented to this court and the appeal must therefore be dismissed.

The New Left contends, however, that even if the case is moot on appeal, the judgment of the district court remains a valid and binding adjudication of their constitutional rights. They maintain that they are entitled at least to the declaratory portion of that judgment.

■ The initial question raised by this contention is whether the case became moot before it was finally adjudicated by the district court, or whether it became moot after a final adjudication and during the pendency of this appeal. If the case became moot before a final adjudication, we must vacate the judgment and direct that the case be dismissed. The district court has no power to decide moot causes. Art. III, Const., and Muskrat v. United States, 1910, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246. On the other hand, if the case became moot during the pendency of this appeal, we must consider additional questions in deciding whether the judgment, which is now unreviewable, is to be allowed to stand.

■ The issue is clouded by the singular procedure through which this case found its way to this court. We think it clear, however, that the case must be regarded as having become moot after a final adjudication in the district court and during the pendency of the appeal. It is true that in a technical sense there was no extant judgment at the time the rules were repealed. At that time, the original judgment of the three-judge court had been vacated by the Supreme Court and the

"fresh" decree had not yet been entered. But the Supreme Court vacated the original judgment, not because the judgment was void, but because appellant had taken its appeal to the wrong tribunal. The proper appeal where a three-judge district court has been improperly convened is to the circuit court, not the Supreme Court. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L. Ed. 800 (1940). Here when the Supreme Court informed the appellant of its error in appealing to that court, the time for appeal to this court had long since expired. Therefore, to protect the appellant's right to appeal, the Supreme Court vacated the original judgment and instructed the district court to issue a fresh decree. This procedure triggered the running of a new period within which the appellant could perfect a timely appeal.

Thus the action of the court was intended to protect the appellant's right to appeal. There is no indication in the Supreme Court's opinion that the court intended to alter whatever result would otherwise have ensued, had the parties followed the proper appellate procedure in the first instance. Appellant's right to appeal has now been vindicated and we consider the case as if it had come to us directly. The inquiry whether the case was mooted before or after the district court judgment in effect answers itself. If the case had come to us directly, there would be no question that it had become moot during the pendency of the appeal, since the repeal of the rules in dispute occurred after, not before, the rendition of original judgment by the three-judge district court. In every substantial sense, the case had been "on appeal" ever since that judgment was entered. We hold that the controversy became moot on appeal.

■■ When a case becomes moot on appeal, the appellate court will normally dismiss the appeal, vacate the judgment of the district court, and remand the case to the district court with instructions to dismiss the complaint. See United States v. Munsingwear, Inc., 340

U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Troy State University v. Dickey, 5 Cir., 1968, 402 F.2d 515, 516–517; Lebus, Regional Director v. Seafarers' Int'l Union, 5 Cir., 1968, 398 F.2d 281, 283. This procedure is dictated by constitutional considerations. The appeal is dismissed because the appellate court has no power to decide moot questions. The judgment is vacated and remanded with instructions to dismiss because of the need to protect the parties from the prejudice that may flow from an unreviewed standing judgment which has become unreviewable because of circumstances beyond their control. This procedure also removes any precedential effect which the judgment might otherwise have. As the Supreme Court noted in *Munsingwear*, supra, this procedure "clears the path for future relitigation . . . between the parties and eliminates a judgment, review of which was prevented through happenstance." 340 U.S. at 40, 71 S.Ct. at 107.

But here we have a case where the appeal has become moot, not because of "happenstance", but through action of the appellant. This being so, we think that a different approach is required. Thus, where the appellant compromises the action, where he desists from engaging in conduct which is the alleged cause of action, where he complies with an injunction, or pays a fine, the courts have dismissed the appeal and allowed the judgment to stand. See County of Dakota v. Glidden, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981 (1885); Cover v. Schwartz, 2 Cir., 1943, 133 F.2d 541; Bingham v. Yingling Chevrolet Co., 10 Cir., 1961, 297 F.2d 341; Grathwohl v. United States, 5 Cir., 1968, 401 F.2d 166; Taylor v. United States, 5 Cir., 1969, 410 F.2d 392.

The rule applied in these cases is not well defined, but the operative considerations are not difficult to perceive. In the normal case of a moot appeal, the appellate court will vacate the judgment below in order to protect the appellant from the prejudicial effect of an unreviewed judgment; but where the appellant moots the appeal by his own action, the necessity of protecting his right to review disappears. The practice of vacating the judgment where the appellant has removed the subject matter of the appeal of his own volition might well provide him with an extra-judicial means of depriving the appellee of the full benefit of a judgment to which he is otherwise entitled. Under such circumstances, as Judge Frank noted in Cover v. Schwartz, supra, "dismissal of the suit, as distinguished from dismissal of the appeal, might result in unfairness to the appellee. . . ." 133 F.2d at 547.

We think that the facts of this case require us to follow the procedure suggested in the cases cited above.

There is nothing in the record before us to indicate that the mootness resulted either partially or entirely from happenstance. There was not here, as in Hall v. Beals, 1969, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214, a change in the statutory law by others following judgment. There the state legislature, as distinguished from the defendant-local officials, changed the law under attack. Here appellants repealed the rules. It is also to be noted that in Hall v. Beals the court did not discuss the question here presented.

The case of Duke Power v. Greenwood County, 1936, 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178, is somewhat analogous to appellant's position. That case involved complications in pleading and hearing procedures resulting from an aborted order of the court of appeals. Appellants called the attention of the court of appeals to the fact that there had been a change in the subject matter of the appeal after the district court judgment. The change was brought about through a change in contract. The Supreme Court reversed with direction that the parties be allowed to amend their pleadings in light of existing facts and that the cause be retried on the issues presented.

The basis for the court's decision was the statement that where "it appears

that supervening facts require a retrial in the light of a changed situation, the appropriate action of the appellate court is to vacate the decree which has been entered and revest the court below with jurisdiction of the cause to the end that the issues may be properly framed and the retrial had." 229 U.S. at 267–268, 57 S.Ct. at 205.

The differences between *Duke Power* and the case before us are two-fold. First, there are no issues to be retried here. There the constitutionality of the use of federal funds to finance local government in operating local government electric power generating facilities was in issue as well as the right of the local government to engage in such activity. The form of the contract was but incidental to the principal constitutional questions. Second, the court, while holding that a retrial was the required procedure where supervening facts so dictated also pointed out that vacation and remand with direction to dismiss was the required procedure where the controversy giving rise to the appeal had become entirely moot. There was no discussion whatever with respect to the appellant's having brought about the mootness.

In sum, we view *Duke Power* as a case where a retrial was indicated. Its dictum regarding mootness was cited in *Munsingwear*, but there the "mootness by happenstance" gloss was superimposed on the dictum.

The short of the matter here is that the mootness of the appeal did not occur by happenstance but solely at the hands of the Regents. The proper practice in such circumstances is to declare the cause moot for appellate purposes, thus leaving the district court judgment intact.

We do so in this instance except as to the question of injunctive relief. Appel-lee concedes that there may be doubt as to the necessity for injunctive relief. Moreover, this question was asserted in the district court by motion, and there was no ruling on the motion. We do not consider the propriety of the district court's having failed to reopen the matter at the time suggested, given the limited remand by the Supreme Court. It is clear that this court may permit the reconsideration of the injunctive portion of the order on remand. 28 USCA, § 2106.[2] The district court should reconsider the need for injunctive relief on the basis of the supervening facts.

Dismissed in part; vacated and remanded in part for reconsideration.

---

2. 28 USCA, § 2106:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."